UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


ROSE McCRACKEN )
 )
v. ) NO. 2:04-CV-318
 )
JO ANNE B. BARNHARDT, )
Commissioner of Social Security )

**MEMORANDUM OPINION**

The plaintiff Rose McCracken has filed a motion for a judgment on the pleadings on her complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt denying her application for supplemental security income under the Social Security Act. The defendant has filed a motion for summary judgment.

Ms. McCracken was born in 1961 and was 42 years old at the time of her administrative hearing. [Tr. 44]. She completed ninth grade and has relevant past work experience as a cashier and a deli worker. [Tr. 15, 44]. Ms. McCracken alleges she is disabled as of September 20, 2002, from degenerative arthritis, a hiatal hernia, stomach bleeds, fibromyalgia, blood clots in her lungs, kidney stones, and depression. [Tr. 42, 97]. Based upon a finding that Ms. McCracken's impairments were severe but not severe enough, the Administrative Law Judge [ALJ] found that Ms.

McCracken was not disabled as defined by the Social Security Act. [Tr. 19].

In November 2001, Ms. McCracken's irritable bowel syndrome [IBS] was causing her difficulty. [Tr. 233-34]. In February, April, August, and October, 2002, Ms. McCracken continued to have difficulty with her IBS, and she was treated each time with medication. [Tr. 225-32].

In December 2001, Ms. McCracken was evaluated at the Southeastern Pain Management Center for back pain. [Tr. 248-51]. She was diagnosed with obesity, degenerative joint disease in her back, knees, and elbows, fibromyalgia (16 of 18 points were tender), tobacco abuse, severe psychosocial dysfunction, and a hiatal hernia. [Tr. 250]. The doctor's sole recommendation was that Ms. McCracken should try Zanaflex for her fibromyalgia. [Tr. 251].

A February 2002 x-ray of Ms. McCracken's cervical spine was unremarkable. [Tr. 242].

Ms. McCracken was seen at the Wellmont Bristol Regional Medical Center [Center] several times from August 2002 until April 2003. [Tr. 255-64]. Her complaints included pain in her right hip and lower back, constant fatigue, intermittent chest pain, chronic constipation, and right lower quadrant pain. [Tr. 257, 258, 260, 262]. In August 2002, Ms. McCracken was admitted to the Center via the emergency room for chest pain, shortness of breath, and weakness. [Tr. 285]. Just a few weeks

2

later, she was back in the hospital with additional complaints of chest pain. [Tr. 340-41]. A physical examination performed at the time was "completely normal except for anxiety and some wheeze upon auscultation." [Tr. 341]. In October 2002, an examination of her lumbar spine indicated some degenerative changes. [Tr. 281]. A February 2003 x-ray of her chest was negative for a pulmonary embolus. [Tr. 276]. However, a lung scan that same month indicated a high probability of pulmonary embolus. [Tr. 360]. In April 2003, Ms. McCracken sought pain medication from one of the doctors at the Center. [Tr. 256]. The doctor noted there were many discrepancies between Ms. McCracken's recounting of how much pain medication she was taking and what pharmacy records showed. [*Id.*]. Ms. McCracken told the doctor she wanted to change physicians because she wanted pain medication and was not being given any. [*Id.*].

In March 2003, Dr. Samuel Breeding evaluated Ms. McCracken in connection with her application for benefits. [Tr. 350-53]. The doctor found she should avoid all activities that could cause bruising as well as avoid respiratory irritants, could lift up to 20 pounds occasionally, sit for four to six hours in an eight-hour workday, and stand for two to four hours in an eight-hour workday. [Tr. 352].

That same month, Ms. McCracken began seeing Dr. Michael Baron of Blue Ridge Medical Specialists because "she has had a blood clot in her lungs." [Tr. 357].

3

The doctor recommended chest wall heat application and exercises. [Tr. 358]. He also ordered a sleep study. [*Id.*].

In March 2003, Dr. Richard Surrusco also examined Ms. McCracken in connection with her application for benefits. [Tr. 369-76]. He found she could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. [Tr. 370]. Ms. McCracken could occasionally climb, balance, stoop, kneel, crouch, and crawl. [Tr. 372].

In April 2003, Dr. Baron saw Ms. McCracken for a follow-up appointment. [Tr. 356]. Ms. McCracken reported feeling weak and tired all the time and was more depressed than ever. [*Id.*].

In May 2003, Ms. McCracken underwent a sleep study. [Tr. 412-17]. The doctor who performed the study recommended an "investigation of the psychological/physiological abnormalities to explain the most prominent abnormalities in the study." [Tr. 412-17].

In July 2003, Dr. Baron saw Ms. McCracken for another follow-up appointment. [Tr. 389]. She continued to have sleeping problems and was instructed to try a nasal saline gel and continue her chest wall exercises. [*Id.*].

In August 2003, a pulmonary function test of Ms. McCracken indicated her

4

lung capacity was normal, and there was no evidence of airway obstruction. [Tr. 399].

At Ms. McCracken's administrative hearing held on December 9, 2003, the testimony of Ms. McCracken and vocational expert Dr. Robert Spangler was received into evidence. [Tr. 43-60]. Ms. McCracken testified she quit school in the tenth grade after failing and repeating both second and fourth grade. [Tr. 44]. She worked at a grocery store for a number of years as a cashier and deli clerk, but she testified her back and stomach pain prevent her from working now. [Tr. 44-45]. Ms. McCracken also indicated she had a hiatal hernia, liver problems, kidney stones, degenerative arthritis, fibromyalgia, sleep apnea, anxiety, and depression. [Tr. 45, 47, 50]. She thought each day of hurting herself, but she did not have a plan of action for doing so. [Tr. 56].

Dr. Robert Spangler, a vocational expert, testified next. [Tr. 57-60]. He classified Ms. McCracken's prior work as a cashier as light, semiskilled and as a deli clerk as light, unskilled. [Tr. 57]. The vocational expert was then asked by the ALJ to consider a person of Ms. McCracken's height, weight, education, and work background who had a RFC for light, sedentary work activity. [*Id.*]. Such a person had to avoid activities around dust and other respiratory irritants as well as exposure to temperature extremes and any activities that could cause bruising. [Tr. 57-58]. Finally, such a person had an emotional disorder with mild to moderate restrictions

regarding her ability to perform work related activities. [Tr. 58]. Dr. Spangler testified such a person could work as a theater usher, factory messenger, food preparation, kitchen worker, production machine tender, assembler, packer, non-construction laborer, craft worker, and production inspector, *inter alia*. [Tr. 58-59].

In February 2004, Ms. McCracken underwent a psychological evaluation by Sharon J. Hughson, Ph.D., in connection with her application for disability benefits. [Tr. 418-26]. Dr. Hughson indicated there was some evidence of malingering and that Ms. McCracken's performance was "a low estimate of her true level of functioning." [Tr. 420]. The results of the IQ testing indicated that Ms. McCracken was functioning in the mild mental retardation level; however, Dr. Hughson indicated that this was considered a low estimate and she believed her true level was in the high borderline or low average range. [Tr. 422]. In sum, the testing session was "*considered invalid and not reliable for [her] current level of functioning.*" [*Id.*]. [Emphasis in original]. The doctor found Ms. McCracken was capable of following work rules and maintaining attention and concentration. [Tr. 423]. She could also manage detailed and simple instructions without a problem. [*Id.*].

The ALJ ruled that Ms. McCracken retained the residual functional capacity [RFC] to perform light and sedentary work that did not require exposure to respiratory irritants, temperature extremes, or activities that would cause bruising. [Tr. 19-20].

6

Case 2:04-cv-00318   Document 14   Filed 05/17/05   Page 6 of 11   PageID #: 25

Given that RFC, the ALJ found that Ms. McCracken was unable to return to her previous relevant work. [Tr. 20]. There was, however, a significant number of jobs in the national economy that she could perform. [Tr. 22].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Ms. McCracken requests a judgment on the pleadings and challenges the ALJ's evaluation of the severity of her mental impairments, the standard he applied for evaluating her pain and fibromyalgia, and his evaluation of her impairments in combination. Ms. McCracken also requests a remand for consideration of new evidence in the record.

Ms. McCracken first challenges the ALJ's evaluation of the severity of her

mental impairments.  The ALJ noted in his decision that Ms. McCracken only required "intermittent treatment for symptoms related to anxiety and depression," did not receive professional mental health treatment, has never required psychiatric hospitalization, functioned independently, and did not have a history of interpersonal problems.  [Tr. 17].  The ALJ rejected as "inconsistent" with her evaluation and treatment history the assessment of Dr. Hughson that Ms. McCracken had "serious limitations in several areas of making occupational, performance, and personal-social adjustments."  [*Id*.].  The ALJ noted that Dr. Hughson stated that Ms. McCracken exhibited malingering behavior.  [*Id*.].  The ALJ then concluded that she had no more greater than mild restrictions in her daily activities and in her ability to maintain attention, concentration, and social interaction.  [Tr. 18].  Therefore, Ms. McCracken did not have a severe mental impairment that significantly affected her ability to perform work-related activities.  [*Id*.].

The record before this court shows that Ms. McCracken responded well to medication for mental impairments.  [Tr. 286].  In addition, Ms. McCracken has never been hospitalized in connection with a mental impairment or received any consistent mental health therapy.  One of her treating physicians noted throughout 2003 that there was no tangible evidence to suggest Ms. McCracken was depressed or nervous.  [Tr. 356, 358, 389].  The ALJ's decision that Ms. McCracken did not have a severe

mental impairment was made with substantial evidence.

Ms. McCracken next contends the ALJ applied an incorrect standard when he evaluated her pain and fibromyalgia. The ALJ found that the record did not support Ms. McCracken's complaints of severe or disabling pain, no physician who treated her opined that she was totally disabled because of fibromyalgia pain, she had not received pain management recently, and her treatment history did not support an allegation of severe pain. [Tr. 20]. In addition, the ALJ found that her fibromyalgia did "not seriously restrict her." [*Id*.].

Ms. McCracken last received pain management treatment for her fibromyalgia in December 2001. [Tr. 248-51]. In addition, Ms. McCracken informed Dr. Hughson in February 2004 that she drove sometimes, shopped, cooked, visited people, and received visitors. [Tr. 421]. Finally, there is some evidence in the record to suggest drug-seeking behavior and malingering. [Tr. 256, 420]. The ALJ's decision that Ms. McCracken's complaints of pain and fibromyalgia were unsupported to the degree alleged was made with substantial evidence.

Ms. McCracken also argues the ALJ erred in his evaluation of her impairments in combination. Impairments have been considered in combination when the ALJ refers to them in the plural (i.e., impairments), focuses the claimant's RFC on more than one impairment, and asks a hypothetical question that encompasses the

9

impairments. *Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990). In Ms. McCracken's case, the ALJ referred to her impairments several times. [Tr. 16, 19, 20, 22]. Ms. McCracken's RFC was crafted by the ALJ considering her status-post pulmonary embolus and fibromyalgia. [Tr. 19-20]. Finally, the hypothetical question asked of the vocational expert incorporated several of Ms. McCracken's impairments. [Tr. 57-58]. There is substantial evidence that the ALJ evaluated Ms. McCracken's impairments in combination.

Finally, Ms. McCracken requests a remand under 42 U.S.C. § 405 (g). This court may remand this case to the Commissioner upon a showing by Ms. McCracken that this new evidence is material to her case and that there was good cause for her failure to include this evidence earlier. 42 U.S.C. § 405 (g). Evidence is material if there is a reasonable probability the ALJ would have reached a different decision had the additional evidence been presented. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The additional evidence included two letters. The first letter was from Dr. Jeffrey Levine in May 2004 and stated that it would be "difficult" for Ms. McCracken to "keep regular employment." [Tr. 9]. The second letter was from Dr. Michael Baron in June 2004 and stated that he considered Ms. McCracken "totally disabled." [Tr. 8].

This new evidence is not material, i.e., it is not likely to have changed the mind

of the ALJ. Decisions about disability and the ability to work are decisions only the ALJ can make. 20 C.F.R. § 404.1527(e)(1). In addition, this new evidence was not really new, and thus no good cause existed for Ms. McCracken's failure to previously include it. Both doctors had been treating Ms. McCracken for years, and they could have written these letters at an earlier date. As such, Ms. McCracken's request for a remand is denied.

Accordingly, Ms. McCracken's motion for a judgment on the pleadings will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

                                        s/Thomas Gray Hull
                                        THOMAS GRAY HULL
                                          SENIOR U. S. DISTRICT JUDGE